NEIL A. GOTEINER (State Bar No. 083524)
ngoteiner@fbm.com
C. BRANDON WISOFF (State Bar No. 121930)
bwisoff@fbm.com
JESSICA NALL (State Bar No. 215149)
jnall@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

ANDREW C. LOURIE (*pro hac vice*)
Andrew.Lourie@kobrekim.com
KOBRE & KIM LLP
1919 M Street NW, Suite 410
Washington, D.C., 20036
Telephone:  (202) 664-1900
Facsimile:  (202) 664-1920

BENJAMIN J.A. SAUTER (*pro hac vice*)
Benjamin.Sauter@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York, 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> MONEX CREDIT COMPANY, MONEX DEPOSIT COMPANY, NEWPORT SERVICES CORPORATION, MICHAEL CARABINI, AND LOUIS CARABINI <br><br> Defendants. | Case No. 8:17-cv-01868-JVS-DFM <br><br> Hon. James V. Selna <br> Dept. 10C <br><br> DEFENDANTS' OPPOSITION TO CFTC'S *EX PARTE* MOTION FOR A PROTECTIVE ORDER AND TO TERMINATE DISCOVERY |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

ARGUMENT ................................................................................................................ 2

    A.    Brief Factual Background of the Procedural Dispute ........................... 2

    B.    The Relevance of the Two Prior CFTC Investigations to Topic 1k. ............................................................................................................. 5

    C.    Mr. Schwartz's Testimony Further Underlined Why Topic 1k Must Include the Two CFTC Investigations' Facts. ............................ 9

        1.    The CFTC "Futures" Investigations of Monex Impeach Mr. Schwartz' Explanation That Monex Kept Facts From Congress About Atlas' Physical Delivery ................................. 9

        2.    A CFTC Fundamental Theme is That Atlas' Alleged "Future-Like" Features Prevent Atlas From Being Actual Delivery. The CFTC's Futures Investigations are Relevant. .............................................................................................. 11

    D.    THE CFTC'S AUTHORITIES ARE INAPPOSITE. ......................... 12

# TABLE OF AUTHORITIES

**Page**

**Federal Court Cases**

*Desert Survivors v. United States Department of the Interior,*
    231 F. Supp. 3d 368 (N.D. Cal. 2017) ................................................................. 13

*Feshbach v. SEC,*
    5 F. Supp. 2d 774 (N.D. Cal. 1997) ..................................................................... 13

*FTC v. Warner Communications, Inc.,*
    742 F.2d 1156 (9th Cir. 1984) .............................................................................. 14

*Gabelli v. SEC,*
    568 U.S. 442 (2013) .............................................................................................. 13

*Hongsermeir v. CIR,*
    621 F.3d 890 (9th Cir. 2010) ................................................................................ 14

*SEC v. Talbot,*
    No. CV044556, 2005 WL 1213797 (C.D. Cal. Apr. 21, 2005) ........................... 13

**Federal Statutory Authorities**

5 U.S.C. § 552(b)(5) .................................................................................................. 13

7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa) ............................................................................. 6, 8

**Federal Rules and Regulations**

76 Fed. Reg. 52426 .................................................................................................. 6, 9

# INTRODUCTION AND SUMMARY OF ARGUMENT

Following unsuccessful meet and confer efforts on the disputed issues, Monex counsel informed the CFTC that Monex would be bringing these issues (and others involving Mr. Gomberg's notes) to the Court for decision. Monex lead counsel suggested scheduling a hearing next week since he was traveling and out of the country Friday (today) through Monday. Instead, the CFTC rushed to court before Monex seeking an *ex parte* application at a time it knows Monex counsel is traveling and constrained to respond. Monex requests that the Court hold a telephonic hearing next week when counsel is available as there is no emergency justifying *ex parte* relief. Contrary to the CFTC's representations, Monex did not unilaterally cancel a scheduled deposition; Monex was always clear that it wanted these issues resolved prior to the deposition. **Monex asks the Court to order that (a) an oral argument be set for next week on either Tuesday or Wednesday, either in person or by telephone, so that the parties can properly address the issues; (b) the deposition take place the week of February 5 on a day that the Court will be available to give the parties telephonic guidance, as the Court offered during the January 18 status conference; and (c) that the briefing deadlines previously suspended by the Court remain suspended until the parties meet and confer on new dates.**

As to the merits, the CFTC's position that the earlier Monex investigations are irrelevant are belied by the recent testimony of its own rule 30(b)(6) witness, Mr. Schwartz. He acknowledged that during the Dodd Frank congressional hearings, Monex was presented (with the CFTC Enforcement Chief and NFA President in attendance) as a company that delivered metals properly and that would thus be unaffected by the amendments. He also acknowledged that following Dodd Frank, the CFTC expressly directed metals dealers to this congressional hearing history to understand the meaning of "actual delivery." To avoid this problem, Mr. Schwartz then suggested – without offering any evidence –

that Monex somehow lied to or withheld information from Congress and the CFTC that would have changed their opinion had they known the true facts. The CFTC – which seeks extraordinary injunctive relief against a company operating in plain view for over 30 years – has thus put in dispute what it did know about Monex from those prior investigations. The evidence will show that the CFTC (1) knew then exactly how Monex was operating, (2) concluded that Monex was properly operating within the clear provisions of the State Model Code and CFTC OGC Letter 85-2 , and (3) can to point to nothing that Monex is doing now in terms of actual delivery that it was not already doing then. Mr. Schwartz was simply trying to blunt the obvious impact of the CFTC standing shoulder-to-shoulder with Monex at the Dodd Frank hearings and the CFTC's own formal guidance that compliance with the State Model Code will generally comply with the requirements of "actual delivery" following Dodd Frank.

In none of the parties' meet and confer efforts did the CFTC once suggest that it does not have this information due to destruction or otherwise. That is a new argument that it raises here for the first time. Instead, the CFTC argued that the information is irrelevant and/or privileged. Those arguments are without merit and to the extent the information is available, the CFTC should be required to provide it. Monex notes that Mr. Richard Wagner, who led the 1987 investigation, participated in a CFTC video conference call with Monex counsel in connection with the CFTC's current investigation. It is not plausible therefore for the CFTC to suggest either that they do not have an institutional memory of the earlier investigations or that they have no access to the facts of those investigations.

## ARGUMENT

### A. Brief Factual Background of the Procedural Dispute

The Court is aware of the parties' prior disputes over the CFTC's interpretation of the Defendants' 30(b)(6) notice regarding risk, the questioning of

Mr. Gomberg to date, the CFTC's substitution of Mr. Robert Schwartz to testify on the CFTC's definition of "actual delivery" and how the CFTC views Atlas metals delivery as increasing customer risk over the CFTC's view of actual delivery. The Court addressed what Defendants had thought remained of Mr. Gomberg's testimony after the completion of Mr. Schwartz' January 18 deposition. The CFTC had then complained, like now, that Monex did not proceed with Mr. Gomberg's deposition on January 16. The CFTC then, like now, ignored that before the deposition could productively proceed, the Court needs to resolve disputes. Then the disputes were about improper CFTC redactions and the CFTC's refusal to produce notes that Mr. Gomberg had identified. The Court ordered the CFTC to make Mr. Gomberg available for 4 additional hours to complete his testimony and that he should produce his notes that he identified. (*See* accompanying Declaration of Neil A. Goteiner Ex. A (Schwartz Dep. Tr.) at 116:22-117:6.) Now the disputes are still the CFTC's refusal to produce Mr. Gomberg's notes which he said he needed to testify on certain topics,[1] as well as the scope of an important 30(b)(6) topic, 1k.

Topic 1k is: "The allegations in paragraph 6 of the Complaint and on page 4 of the MOL that an Atlas transaction operates similarly to a futures trade on a regulated exchange."[2] This topic is critical to the CFTC's entire case, as Mr. Schwartz reconfirmed in his January 18 testimony, and as we summarize below. Equally importantly, as also discussed below, the facts that the CFTC developed as part of its earlier investigations bear directly on the impeachment of the CFTC's January 18 30(b)(6) testimony of Mr. Schwartz regarding what the CFTC knew when it testified at the June 4, 2009 Risk Management Subcommittee hearing on

---

[1] Now the CFTC is still refusing to produce Mr. Gomberg's identified notes with an explanation that sharply contradicted his testimony, as Defendants' counsel explained to the CFTC. *See* Goteiner Decl. ¶ 4 & Ex. D at 1-3.

[2] *See* CFTC's Responses and Objections to Defendants' Amended Notice of Rule 30(b)(6) Examination at 10-11 (CFTC's Ex Parte Motion, Ex. C).

the *Zelener* fix.[3]

As with Mr. Gomberg's provisional January 16 deposition date, Defendants agreed to a date, this time January 31, subject to the parties' again agreeing on the CFTC following the Court's January 3, January 5, and January 18 orders on the CFTC's production, on the 30(b)(6) topic scope, and on the Court's availability during the deposition. Goteiner Decl. ¶ 5 & Ex. C at 1-3. Defendants also explained the relevance of the 1987 and 1988 investigations in detail to CFTC counsel, which explanation the CFTC never rebutted. Goteiner Decl. Ex. B at 1-2, 5-6. Defendants' counsel therefore as promised and after explaining further Defendants' argument, notified the CFTC the evening of January 24 that:

> Carlin: As promised, we're informing you that we're proceeding with our motion on the CFTC investigations. We'll attempt to draft and file something tomorrow or Friday. Let's attempt to set hearing with the Court next week. I'll clear my calendar the following week for the deposition, depending on how the court rules. That way Staff's most recent delay will not be more than a week. I'll tell you tomorrow how many pages are necessary based in part on our review of Mr. Schwartz' testimony. I'm providing you with more information about our argument not only for the meet and confer, but also so that you can start drafting your opposition so that we can that much more quickly complete briefing.

Goteiner Decl. Ex. B at 1. Defendants' counsel followed up on January 25 asking for a conference call to discuss next steps. Then later in the afternoon, CFTC counsel informed Defendants of their *ex parte* notice, notwithstanding their knowledge that Defense counsel had previously informed them that he was traveling on Friday the 26th and the lack of any need for an emergency motion given that the provisionally planned January 31 deposition could not go forward without the Court ruling on the parties dispute.

---

[3] Even if the prior investigations were not expressly included in the wording of the notice, they are critical in light of Mr. Schwarz's testimony. The Court should thus require the CFTC to provide that information.

4

### B. The Relevance of the Two Prior CFTC Investigations to Topic 1k.

There can be no doubt after Mr. Schwartz's deposition admissions that the facts developed in the CFTC's prior two investigations of Monex are highly relevant, if not on their own dispositive of the CFTC's statutory jurisdiction and authority to sue Monex. To begin with, the CFTC has never disputed the declaration of Monex's in-house counsel that since 1986 nothing has materially changed in the Atlas program's documentation, financing, title transfer to the customer, margin calls, and delivery of metals to the depositories and to the personal possession of the customer once the customer pays off the loan.[4] Mr. Schwartz admitted that he was not aware of any additional increased Atlas delivery risks since the CFTC 1987 and 1988 investigations (Ex. A at 56:23-57:20.) The CFTC has also not disputed that the CFTC in those investigations was determining whether there was CFTC jurisdiction or statutory authority over Atlas. If Atlas had not fastidiously followed the Model State Commodity Code and CFTC OGC Letter 85-2 for physical delivery to the depository, the CFTC would have so notified Monex and charged Monex with dealing with non-exempted futures or futures-like contracts. The CFTC reached conclusions based on their investigation that Monex was making physical delivery of the metals pursuant to the Model Code. (*See* Ex. F ¶¶ 5-9 and accompanying Ex. A ¶¶ 45-49.) In those investigations, the CFTC had access to all Monex's documents. Notably those documents included Monex's Atlas Account Agreements as well as all financing contracts and agreements between Monex and its lending bank; indeed the CFTC directly subpoenaed Monex's lenders in its 1998 investigation into whether Atlas involved futures.[5]

---

[4] *See* September 3, 2014 Declaration of Gregory G.Walker in opposition to the CFTC subpoena enforcement action that led directly to this litigation, attached to Goteiner Decl. as Ex. F.

[5] The CFTC's Request Number 6 in the 1998 investigation sought "all contracts or agreements between Farmers and Merchants Bank of Long Beach and Monex[.]" *Id.* at 3. The 1998 investigative subpoena was in the investigative action entitled

Those investigation-developed facts apparently informed the testimony of the Chief of CFTC Division of Enforcement, Steven Obie, at the Congressional Hearing directly leading to Dodd Frank Section 742, which exempted those retail dealers making actual delivery under the Model Code and pursuant to 85-2. That Congressional Hearing was critical to determining the meaning of "actual delivery" and Congressional intent to preclude CFTC jurisdiction and authority over those firms making actual delivery under 7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa).

The CFTC notified the public twice that this Congressional Hearing was the primary source of Congressional intent as to the meaning of the statute's plain words "actual delivery," first in its December 14, 2011 Interpretation Requesting for comments,[6] and second in its August 23, 2013 Final Guidance.[7] The CFTC for three years in this litigation refused to cite to its public announcements as the sole source for the meaning and Congressional intent of actual delivery. Even when Defendants' asked Mr. Schwartz about the CFTC's sources for the meaning of actual delivery, Defendants needed to remind Mr. Schwartz that the CFTC's 2013 Guidance referred the public to the legislative history. (Ex. A at 9:8-10:10.) The CFTC finally, however, admitted this central fact through Mr. Schwartz. (Ex. A at 14:16-24.) Mr. Schwartz also admitted that there was nothing in the legislative history or in any of the CFTC's pronouncements that suggested the "control and possession" rubric that was at the core of the CFTC's ad hoc litigation-specific definition of actual delivery. (Ex. A at 38:22-40:23.) The CFTC also admitted via

---

"Off Exchange Finances Precious Metals, Heating Oil, and Unleaded Gas Futures Contracts." *See* Goteiner Decl. Ex. E.

[6] Goteiner Decl. Ex. G (CFTC's Interpretation, Request for Comments issued on December 14, 2011 (17 FR 77670-02)) at n.12.

[7] Goteiner Decl. Ex. H (CFTC's August 23, 2013 Retail Commodity Transactions Under Commodity Exchange Act, Interpretation, 76 Fed. Reg. 52426) at 52428 ("This interpretation of the statutory language is based on Congress's use of the word 'actual' to modify 'delivery' and on the legislative history of new CEA section 2(c)(2)(D)(ii)(III)(aa) described above.").

Mr. Schwartz that *Hunter Wise* provided no logic for the CFTC's "control and possession," rubric since *Hunter Wise* was focused only on the *firm's* lack of control and possession since the firm had no inventory to convey (Ex. A at 40:24-41:15, 42:20-43:6), as distinguished from Monex which did convey all metals to the depository (*id.* at 40:20-21; 86:4-21).

Additional core truths emerged from Mr. Schwartz' admissions that made Monex's 1987 and 1988 investigations' factual conclusions dispositive. Congress did not with Dodd Frank intend to expand at all the CFTC's pre-*Zelener* jurisdiction or enforcement authority. Congress was changing nothing about what was already CFTC policy in not regulating or bringing enforcement actions against retail precious metals firms. Congress' purpose was, as Congressman Marshall said, to legislate a *Zelener* "fix" as Congress had done with foreign exchange dealers: "[w]e are correcting an aberration, what you would say is an improper reading of what congressional intent was in the statute." (Ex. A at 36:14-16 (reviewing Subcommittee hearing transcript (Ex. I) at SA 79).) This was also the NFA's view. (Ex. I at SA 79 ("What we are talking about here though is expanding the – well, correcting would be the argument the Zelener interpretation of what a futures contract is.").)

Mr. Schwartz testified to the same effect. (Ex. A at 16:24-17:21.) This should have been no surprise to the CFTC during the entire proceeding. For the CFTC in its 2011 Interpretation seeking commentary specifically quoted Congressman Marshall's and the NFA's view about the *Zelener* correction. (Goteiner Decl. Ex. G n.12.) And the title of the Subcommittee started with "Hearing to Review Implications of the *CFTC v. Zelener* Case . . ." And so when Mr. Schwartz explained the *Zelener* fix to the Court on January 18, he returned to the basic point that the CEA applies to financed precious metals transactions, "unless the commodity is actually delivered within 28 days." (Ex. A at 17:14-21.) Of course, that was exactly the actual/physical delivery requirement that the CFTC

7

and the courts were applying to Monex and other precious metals dealers before *Zelener* to determine whether the CEA would assert CFTC jurisdiction and authority over precious metals dealers. And that was exactly what the CFTC was confirming in its two investigations of Monex – that is, that Monex physical delivery to the depository was in compliance with the Model Code and OGC letter 85-2. And so of course Dodd Frank didn't change the law as to Monex by making the *Zelener* fix. Indeed the only regulatory authority that Congress gave the CFTC in section § 2(c)(2)(D)(ii)(III)(aa) was to *lengthen* the delivery period to 28 days. The Congressional Subcommittee also made crystal clear that the Model Code and Office of General Counsel 85-2 Letter controlled before *Zelener* and should control after what would become the Dodd Frank amendment. NFA President Dan Roth testified specifically about this relationship between the Model Code and 85-2 requirements and the depository delivery fix that he was proposing to Congress, and which Congress adopted. (Ex. A at 48:21-50:19.)

Another core truth that Mr. Schwartz' testimony confirmed was that Congress' intent in what became § 2(c)(2)(D)(ii)(III)(aa) was to end the risk to the customer of bucket shops and ponzi schemes where no metal was delivered to the depository because the firm had no inventory of metal. (Ex. A at 19:10-24, 21:1-8 (referencing the Subcommittee testimony (Ex. I) at SA 78, 81-85.) The Subcommittee did not want to interfere with dealers who were making physical delivery; the Subcommittee, particularly NFA President Roth, focused on Monex as making such delivery, as Mr. Schwartz also acknowledged. (Ex. A at 27:1-8, 50:7-51:5 (referencing Ex. I at SA 78).) The CFTC knew at the Subcommittee hearing that Monex had twice passed its investigations. Neither the CFTC nor the Committee were interested in the hypertechnical arguments that the CFTC is now attempting to graft on to the test for actual delivery. They were interested in ensuring that all financed precious metals retailers followed the Model Code provisions, like Monex.

The CFTC adopted in its Final Guidance the Model Code delivery provision, providing for fungible bulk storage and liens on the precious metals collateral (*see* Goteiner Decl. Ex. H at 76 Fed. Reg. 52426 n.25), notwithstanding Mr. Schwartz' equivocation (Ex. A at 68:4-69:7). Thus the CFTC by its Final Guidance demonstrated further that there was no practical difference between Monex's pre–Dodd Frank Model Code compliant physical delivery, and the CFTC's understanding of Congress' "actual delivery" under the 2(c) exemption.

Thus the CFTC's pre–Dodd Frank 1987 and 1998 investigations of Monex regarding what the CFTC told Monex, what it concluded factually about Monex are all precisely on point in this litigation.

### C. Mr. Schwartz's Testimony Further Underlined Why Topic 1k Must Include the Two CFTC Investigations' Facts.

#### 1. The CFTC "Futures" Investigations of Monex Impeach Mr. Schwartz' Explanation That Monex Kept Facts From Congress About Atlas' Physical Delivery

Defendants confronted Mr. Schwartz with NFA President Roth's and Congressman Marshall's statements about not wanting to interfere with Monex's legitimate physical delivery operations. (Ex. A at 34:14-18 (referencing, *e.g.*, Ex. I at SA 79).) Mr. Schwartz also reviewed how Congress told the CFTC, the NFA and Monex more than once to coordinate on drafting the language of what would become Dodd Frank section 742. (Ex. A at 23:9-18 (referencing Ex. I at 81, 88, 91).) It was clear from the Subcommittee testimony and colloquy that the Subcommittee was looking to Monex's decades-old history of reliable physical delivery to be the litmus test for the NFA's prescription of actual delivery in 28 days.

That legislative history, to which the CFTC directed the public for the meaning of actual delivery obviously makes the CFTC action against Monex look, gently put, unreasonable and unfair. The CFTC's response was to have Mr.

Schwartz's speculate that the result might have been different had the CFTC and Congress had more facts about Monex's "futures like features of its trading platform." that Monex "omitted" from its testimony. (Ex. A at 21:9-24. *But see id.* at 24:20-25:17 (finally admitting that the Subcommittee had access to the Atlas Account Agreements).)

Thus, Mr. Schwartz' testimony about Monex misleading Congress and the CFTC makes highly relevant what the CFTC's investigations over the years learned and concluded factually about Monex's physical delivery of the metals to depositories. The CFTC cannot suggest Monex kept secret from the CFTC and Congress information that the CFTC had collected about Monex. Obviously, Congress reasonably supposed that the CFTC would have said something had it been the least bit uncomfortable with Congress endorsing Atlas actual delivery program as a reasonable model for Congress's actual delivery exemption.

The same rationale applies to the CFTC's current litigation-specific charge that Monex's "short" product – the commodity loan – was a "futures-like" contract (Ex. A at 86:25-87:12.) The CFTC's prior investigations also considered Monex's short product. (*See* Ex. F ¶ 5, and accompanying Ex. A ¶ 34.) It is therefore highly relevant what factual conclusions the CFTC reached about the short in the 1987 and 1988 investigation. And so those facts were also before the Congressional committee, through the CFTC's investigations of Monex, when the CFTC Division of Enforcement Chief was mute in the face of NFA and Congressional endorsement of Monex's depository physical delivery execution.

And so the CFTC in its Congressional testimony did in fact have all the Monex-related facts from its two investigations to determine Monex's Model Code compliance and whether Monex was selling futures or futures-like instruments. Those facts are more relevant now, since there is no dispute that Monex's actual delivery is operating now as it operated in 1987 and 1988. And so Mr. Gomberg should be compelled to testify about the facts developed in these investigations

given the CFTC's 30(b)(6) testimony, allegations and arguments concerning Atlas' "futures-like" attributes that the CFTC says precludes actual delivery.[8]

### 2. A CFTC Fundamental Theme is That Atlas' Alleged "Future-Like" Features Prevent Atlas From Being Actual Delivery. The CFTC's Futures Investigations are Relevant.

The CFTC argues that the investigations are not relevant because "[c]rucially, the CFTC does not allege in this case that Monex's transaction *are* futures contracts; rather, the Complaint alleges that they 'bear key similarities to trading on regulated futures exchanges.'" (*Ex Parte* Motion at 7:25-26.) The CFTC, however, has made their futures similarity point a key to their entire attack on Monex's actual delivery. Some eight times in the CFTC's Preliminary Injunction Memorandum it charged that Monex did not make actual delivery because Monex was a "trading platform," used "futures-like" features, and should be treated as if it is trading futures. (PI Mem. at 1, 4, 5, 18, 19-20, 33.) And Mr. Schwartz explained that it was the "futures-like features of its trading platform," (nonsensically regarding Monex's financing) which misled Congress and Mr. Obie into believing that Monex made actual delivery to depositories and to its customers. (Ex. A at 45:6-17.) And again, according to Mr. Schwartz, there are ways different from the now admittedly inapposite *Hunter Wise* fact pattern, how a firm having actual metals in the depository like Monex can still fail to make actual delivery; Mr. Schwartz explained that a purported metals vendor could violate the CEA through trading of "futures-like positions," on its trading platform. (Ex. A at 28:19-29:11, 40:20-21.) Mr. Schwartz specifically identified Monex to be one of those speculative trading platforms rather than being a metals vendor, because Monex does not make actual delivery (Ex. A at 103:23.) He also testified how the

---

[8] Defendants of course recognize that Mr. Schwartz' speculative snipes at Monex for omitting facts during the Subcommittee Hearing cannot dilute the CFTC's Guidance that this legislative history determines Congressional intent. It's too late for the CFTC to take back its Guidance on which the industry relied.

11

Atlas short product could be a "futures contract," (Ex. A at 87:3-12), and how a margin call is a futures-like feature (Ex. A at 45:13-17).

And so the CFTC's protests now that its two prior futures investigations are irrelevant, are unavailing. Rather the CFTC is still attempting disingenuously to plug into the NFA's and Congress' objective to prevent firms from disguising futures contracts, with no actual delivery as cash contracts. (Ex. A at 50:7-51:5 (discussing colloquy between NFA President Roth and Congressman Marshall, Ex. I at SA 78.)

Defendants also respectfully draw the Court's attention to the fact that the CFTC's futures-like-platform argument is now even more critical to the CFTC's case. As was clear from Mr. Schwartz's 30(b)(6) testimony, he could point to no material greater Atlas customer risk attached to the CFTC's "sham factors." (*See, e.g.*, Ex. A at 71:18-72:14, 77:12-21.) He brought this issue to the forefront when he argued that there is no actual delivery because, for example: (1) Atlas customers could not take unpaid-for metals home (Ex. A at 68:4-8); (2) the loan itself prevented actual delivery (*id.* at 86:25-87:17); (3) the customer could not see his gold at the depository when the CFTC itself and the Model code specifically provide for bulk fungible storage at the depository which would make the customer viewing impossible (*id.* at 77:8-11); or (4) margin calls and forced liquidations which prevent additional customer market losses, and which do not increase customer risk (*id.* at 78:22-81:9). And so Monex should be able to explore the facts of why the CFTC previously found there to be physical delivery and that Monex was not selling off exchange futures.

D. **THE CFTC'S AUTHORITIES ARE INAPPOSITE.**

The CFTC's general claim that Mr. Gomberg is unable to discuss the prior investigations due to privilege concerns is overblown. No privilege attaches to the *facts* of the underlying investigations, such as: what materials the CFTC had available to it during its investigation, the facts of Monex's delivery of the precious

metals to the depositories, any delivery risks associated with Monex's operations, and any risks to the customers from Monex's short product.

The CFTC's privilege arguments and supporting case law, such as *Gabelli v. SEC*, 568 U.S. 442, 453 (2013), merely restate the common refrain that certain materials during an agency investigation *may* be covered by either attorney-client, work product, or deliberative process privilege. Without stating precisely what information the CFTC is seeking to protect, the CFTC has failed to state a privilege argument. This is especially true in light of the CFTC's contradictory claim that they do not have documents from the prior investigations. (*Ex Parte* Motion at 9.)

The CFTC relies on *Feshbach v. SEC*, 5 F. Supp. 2d 774 (N.D. Cal. 1997), for the proposition that memorandum memorializing an investigation are covered by work product privilege. However, the memorandum at issue in *Feshbach* did not "memorialize" the SEC's factual investigation — rather it addressed issues such as attorney impressions of witness conduct and requests to expedite consideration of staff recommendations. *See id.* at 782-83. Defendants are not requesting Mr. Gomberg to testify as to such day-to-day minutia of the CFTC's investigation. The CFTC's reliance on *SEC v. Talbot*, No. CV044556, 2005 WL 1213797, at *1 (C.D. Cal. Apr. 21, 2005), is similarly unhelpful to the CFTC as it merely as it merely holds that attorney notes are covered by work product privilege. Defendants do not dispute this general principle and have not requested that the CFTC produce any such attorney notes.

The CFTC's reliance on the deliberative process privilege is misplaced. The deliberative process privilege does not apply at all to the CFTC's 1987 investigation because any documents created for that investigation are more than 25-years old and are thus no longer covered by the privilege. *See* 5 U.S.C. § 552(b)(5) (amended in 2016 to include the 25-year restriction); *Desert Survivors v. U.S. Dept. of the Interior*, 231 F. Supp. 3d 368 (N.D. Cal. 2017) (citing § 552(b)(5) saying the deliberative process privilege does not apply to records

13

created more than 25 years ago). As for the 1998 investigation, the deliberative process privilege does not protect facts, and the party invoking the privilege is responsible for segregating the facts from other privileged materials and disclosing them. *FTC v. Warner Commcn's, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) ("Purely factual material that does not reflect deliberative processes is not protected."). The court in *Hongsermeir v. CIR*, 621 F.3d 890 (9th Cir. 2010), does not hold otherwise.

Dated: January 26, 2018

FARELLA, BRAUN + MARTEL, LLP

By: /s/ Neil. A. Goteiner

NEIL A. GOTEINER
C. BRANDON WISOFF
JESSICA NALL

FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

ANDREW C. LOURIE (*pro hac vice*)
Andrew.Lourie@kobrekim.com
KOBRE & KIM LLP
1919 M Street NW, Suite 410
Washington, D.C.
Telephone:  (202) 664-1900
Facsimile:  (202) 664-1920

BENJAMIN J.A. SAUTER (*pro hac vice*)
Benjamin.Sauter@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York, 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

*Attorneys for Defendants*

30203\6428451.3